# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DEBORAH LUSTER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: CV 04-P-0237-S** |
| } | |
| **CASH AMERICA,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 18). The motion has been fully briefed and was under submission as of January 10, 2005. (Doc. # 11).

Plaintiff Deborah Luster claims gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, against her former employer, Cash America. (Complaint). Plaintiff contends that her employment was terminated by Cash America, and that she was replaced by a male employee who was less qualified and had less experience. (Complaint, at ¶ 13).

For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law.

**I.  Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[1]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 801-02; *Burdine*, 450 U.S. at 251-54.

---

[1] Here, there is no dispute that Plaintiff has presented only circumstantial evidence of discrimination.

## II.     Relevant Undisputed Facts[2]

Cash America operates four locations in Alabama. (Makovsky Depo. at 75-76). In December 2001, Cash America hired Plaintiff as a Store Manager position at its Five Points West location in Birmingham, Alabama ("Store No. 3"). (Pl. Depo. at 31-32). Plaintiff was the Store Manager at Store No. 3 throughout her employment with Cash America. (Pl. Depo. at 32). In August 2002, Sean Makovsky began supervising Plaintiff and Store No. 3. (Makovsky at 10; Pl. Depo. at 32-34). Plaintiff did not have any problems with Makovsky as her supervisor during her employment at Cash America. (Pl. Depo. at 35).

### A.     Plaintiff's Separation from Cash America

Store No. 3 was robbed four times during Plaintiff's employment with Cash America. (Pl. Depo. at 68-73). On July 22, 2003, Store No. 3 was robbed for the fourth time. (Pl. Depo. at 68-73; Doc. # 15, Ex. C). Immediately after the fourth robbery, Plaintiff called to inform Makovsky that Store No. 3 had been robbed. (Pl. Depo. at 73; Doc. # 15, Ex. C). Plaintiff admits that, during this phone call, she "probably" told Makovsky that she was "quitting," although she was "pretty sure [she] said it after every one of [the robberies]." (Pl. Depo. at 73; Doc. # 15, Ex. C).[3] Makovsky accepted Plaintiff's resignation. (Makovsky Depo. at 61-62).

A week later, on July 29, 2003, Makovsky processed the paperwork evidencing Plaintiff's voluntary resignation, and promoted Monjea Gant, a male employee, into the Store Manager position for Store No. 3. (Makovsky Depo. at 60-62). On July 30, 2003, Makovsky informed Plaintiff, who

---

[2] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[3] Plaintiff also testified that she called Makovsky the day after the robbery and told him that she loved her job, but that "we have got to feel secure. I said what more can we do." (Pl. Depo. at 81).

was in Store No. 3 to attend a counseling session with a mental health professional,[4] that he had accepted her resignation, and had replaced her with Gant. (Makovsky Depo. at 57-58; Pl. Depo. at 73; Doc. # 15, Ex. C). Plaintiff responded by saying, "what resignation. He said the one you gave me. I said when did I resign. He said the day of the robbery." (Pl. Depo. at 96).

Makovsky chose Gant to fill the position based on his successful performance as an Assistant Manager in another Cash America store and because of his interview skills. (Makovsky Depo. at 44). Gant also had managerial experience with a national grocery store chain prior to his employment with Cash America. (Makovsky Depo. at 32-33). Plaintiff did not agree with Makovsky's decision to promote Gant to the Store Manager position because she did not feel that he was qualified to manage the store. (Pl. Depo. at 104, 164, 169-70). Plaintiff felt she was "unfairly singled out and terminated" after the robbery. (Pl. Depo. at 60).

### B. Plaintiff's Unemployment Compensation Benefits Hearing

In August 2003, Plaintiff filed an application for unemployment compensation benefits with the State of Alabama's Department of Industrial Relations ("ADIR"). (Doc. # 15, Ex. D, at 032). On August 26, 2003, ADIR denied Plaintiff's claim for benefits, finding that she had voluntarily quit her position with Defendant without good cause. (Doc. # 15, Ex. D, at 032). Plaintiff appealed the decision to the Hearings and Appeals Division of the ADIR. (Doc. # 15, Ex. D, at 021-22; Pl. Depo. at 54). The notice of hearing indicated that the question of whether Plaintiff had voluntarily resigned or had been discharged for misconduct was going to be at issue at the hearing. (Doc. # 15, Ex. D, at 023).

---

[4] After the robbery, Makovsky made arrangements for interested employees to meet with a mental health professional. (Makovsky Depo. at 21-23).

4

Plaintiff attended the Appeals Hearing on October 2, 2003, along with Makovsky and two witnesses. (Doc. # 15, Ex. D, at 021-22; Pl. Depo. at 55). Plaintiff testified truthfully while under oath at the hearing. (Pl. Depo. at 104). At the hearing, Plaintiff admitted that she informed Defendant that its actions to make Store No. 3 more safe was "too little too late," and that she quit her position as Store Manager. (Doc. # 15, Ex. D, at 021-22). Plaintiff acknowledged that she voluntarily resigned after the fourth robbery, but maintained that she did not mean it and only said it because she was upset after being present at the store during the robbery. (Doc. # 15, Ex. D, at 020).

On October 16, 2003, the Hearings and Appeals Division found that Plaintiff voluntarily quit her position with Cash America, but awarded Plaintiff benefits because, due to the four robberies, Plaintiff had good cause for abandoning her position. (Doc. # 15, Ex. D, at 021-022).

### C.  Plaintiff's Claims

Plaintiff first contacted a attorney because she was "concerned with the safety, our safety and I figured that we had a case because they weren't trying to protect us…." (Pl. Depo. at 135). Plaintiff asked her attorney if she could sue Cash America "for safety, not [for] discrimination." (Pl. Depo. at 136). On September 17, 2003, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that she had been discriminated against on the basis of her gender with respect to her termination. (Doc. # 15, Ex. E). On February 5, 2004, Plaintiff filed this lawsuit. (*See* Complaint at ¶ 13).

### III.  Applicable Substantive Law and Discussion

Defendant's motion argues that summary judgment is due to be granted on Plaintiff's gender discrimination claim because she is barred by the doctrine of collateral estoppel from relitigating the reasons for her departure from Cash America. As outlined below, the court finds Defendant's

arguments persuasive and grants summary judgment in favor of Defendant.

Collateral estoppel or "issue" preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *Quinn v. Monroe County*, 330 F.3d 1320, 1328 (11th Cir. 2003). The Eleventh Circuit gives preclusive effect to a state court judgment when two prerequisites are met: (1) the state courts from which the judgment emerged would also give preclusive effect; and (2) the litigants had a full and fair opportunity to litigate their claims and the applicable requirements of due process are satisfied. *Quinn*, 330 F.3d at 1329; *Shields v. Bellsouth Adver. & Publ'g Co., Inc.*, 228 F.3d 1284, 1288 (11th Cir.2000). "Similarly, when a state agency acts in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, we give the agency's fact-finding the same preclusive effect to which it would be entitled in the state courts." *Quinn*, 330 F.3d at 1329 (citing *University of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)). The preclusive effect applies even where the state agency's fact-finding has not been reviewed by a state court. *Quinn*, 330 F.3d at 1329

The Alabama Supreme Court has held that an unemployment compensation decision can collaterally estop a subsequent lawsuit because the parties to an unemployment compensation hearing are bound by the hearing officer's findings of fact. *Wal-Mart Stores v. Smitherman*, 743 So.2d 442, 445 (Ala. 1999). Under Alabama law, a plaintiff is collaterally estopped from raising an issue already raised in an administrative proceeding if the following elements are met: (1) identity of the parties; (2) identity of the issues; (3) an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be precluded were actually litigated and determined in the administrative proceeding; and (5) the findings on those issues were necessary to the administrative decision. *Smitherman*, 743 So. 2d at 445.

Post-*Smitherman*, at least one federal district court in Alabama has applied issue preclusion to the unreviewed findings of an unemployment compensation benefit appeals referee. *Rigby v. Marshall*, 134 F.Supp.2d 1259 (M.D.Ala. 2000). In *Rigby*, the plaintiff was terminated for assorted misconduct, and his application for unemployment compensation benefits was opposed by his former employer. *Rigby*, 134 F.Supp.2d at 1260-61. After a hearing before the appeals referee, Rigby was granted only partial unemployment benefits because the referee found that he was discharged for violations of employer policies. *Rigby*, 134 F.Supp.2d at 1260-61. Rigby then brought a federal claim under § 1983 for first amendment retaliation. *Rigby*, 134 F.Supp.2d at 1260-61. The district court held that Rigby was collaterally estopped from pursuing his § 1983 claim because: (1) Rigby's claim that his termination was retaliatory was resolved by the appeals referee;[5] and (2) Rigby was afforded an adequate opportunity to litigate that matter before the administrative agency. *Rigby*, 134 F.Supp.2d at 1262-63. Therefore, collateral estoppel barred "any argument or proof that Rigby was terminated for any reason other than violation of his employer's policies and procedures as found by the unemployment compensation benefit appeals referee." *Rigby*, 134 F.Supp.2d at 1262-64.

This case is undistinguishable from *Smitherman* and *Rigby*. Plaintiff applied for unemployment benefits from ADIR, a state agency acting in its judicial capacity. Plaintiff was notified that a hearing would be held and that the issue to be determined at the hearing was whether Plaintiff voluntarily resigned or was discharged for misconduct. At the October 2003 hearing before the appeals referee, Plaintiff was afforded an adequate opportunity to litigate the issue of whether

---

[5] The court noted that, even though Rigby never specifically argued retaliation as a reason for his discharge to the appeals referee, collateral estoppel still applied to his retaliatory discharge claim under § 1983 because Rigby "extensively argued [at the appeals hearing] the events . . . out of which the alleged retaliatory action arose." *Rigby*, 134 F.Supp.2d at 1263-64. The court found that facts that would support a retaliation claim were known to Rigby at the hearing, and therefore, the claim could have been raised. *Rigby*, 134 F.Supp.2d at 1262-64.

or not she voluntarily resigned.[6] Plaintiff acknowledged that she did quit after the fourth robbery, although she claimed that she did not "really mean it." Because the ADIR acted in a judicial capacity and the parties had an adequate opportunity to litigate, this Court must give preclusive effect to the finding of the hearing referee's finding that Plaintiff voluntarily resigned from her employment with Cash America. *See Quinn,* 330 F.3d at 1328-29.

All of the elements of collateral estoppel are met in this case: the parties are the same, and both the unemployment compensation benefits case and Plaintiff's claim under Title VII require litigation of one common issue – the reason underlying Plaintiff's separation from employment. Plaintiff had an adequate opportunity to litigate this issue in the proceeding before the appeals referee, and she knew in that proceeding that Cash America was asserting that she had quit. Finally, the appeals referee made clear in his final decision that he found Plaintiff had voluntarily quit her employment with Cash America. Because all five elements of collateral estoppel are met, Plaintiff is estopped from relitigating the reason for her discharge in this action. *See Shields v. Bellsouth Adver. & Publ'g Co., Inc.*, 254 F.3d 986, 987 (11th Cir. 2001)(holding that a plaintiff's ADA claim is barred by collateral estoppel).

To present a *prima facie* case of discriminatory discharge in the Eleventh Circuit, a plaintiff must prove: (1) that she was a member of a protected class, (2) that she was qualified for the job, (3)

---

[6] "The Unemployment Compensation Act requires that the appeals tribunal 'afford the parties reasonable opportunity for [a] fair hearing.' Ala. Code 1975, § 25-4-93. The procedure for conducting the hearing is prescribed by regulations of the Department of Industrial Relations. *See* § 25-4-92(b); *see generally* Ala. Admin Code r. 480-1-4-.04 to -.06. Those regulations provide for a hearing at which the parties are afforded the opportunity to present evidence and testimony of witnesses given under oath. *See* Ala. Admin Code r. 480-1-4-.04. A party may be represented by an attorney. *See* Ala. Admin Code r. 480-1-4-.05. The parties are also afforded the opportunity to request that the hearing officer issue subpoenas to compel the attendance of witnesses or the production of documents or other things. *See* Ala. Admin Code r. 480-1-4-.06." *See Wal-Mart Stores, Inc. v. Hepp*, 882 So. 2d 329, 334 (Ala. 2003)(quoting *Smitherman*, 743 So.2d at 446).

8

that she suffered an adverse employment action, and (4) that she was replaced by someone outside the protected class. *Cuddeback v. Florida Brd. Of Educ., et al.*, 381 F.3d 1230, 1235 (11th Cir. Aug. 25, 2004). Because Plaintiff is bound by the finding that she voluntarily resigned, Plaintiff cannot demonstrate that she suffered an adverse employment action and her prima facie case fails.[7] Therefore, Plaintiff's claim for intentional sex discrimination cannot survive summary judgment.[8]

### IV.   Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Defendant is entitled to judgment as a matter of law.  A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___24th___ day of February, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff maintains that summary judgment should be denied because the following material facts are in dispute: (1) whether Plaintiff resigned; (2) whether she rescinded her resignation; (3) whether her resignation was accepted at the time she said "I quit" after the robbery; and (4) whether Plaintiff was involuntarily terminated. (Doc. # 19, at 3).  Contrary to Plaintiff's assertions, the appeals referee's finding that Plaintiff voluntarily quit her employment with Cash America renders these facts undisputed in this case.

[8] Alternatively, Defendant argues that summary judgment is also due to be granted because Plaintiff has not presented any evidence of pretext.  The court agrees.  Plaintiff's bald assertions that the reasons behind her employment separation were pretextual are not enough. Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987).  Accordingly, Plaintiff's failure to present evidence that her separation from employment was due to discrimination supplies an alternative basis for granting Defendant's motion.